UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:02CV01488 ERW |
| | ) | |
| MALLINCKRODT, INC., SHELL OIL | ) | |
| CO. and SOLUTIA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon Plaintiff's Motion to Approve Consent Judgment [doc. #641].

**I.    BACKGROUND**

The United States is seeking reimbursement from the potentially responsible parties (PRPs) for cleanup costs associated with the Great Lakes Container Corporation Superfund Site ("the Site") incurred by the Environmental Protection Agency ("EPA"). The United States has entered into settlement agreements with certain PRPs. At issue in this case is the proposed partial Consent Decree between the United States and Shell Oil Company ("Shell"), for the recovery of response costs related to the removal of lead contamination at the Site.[1]

Shell has agreed to pay $228,630.00 in return for a release of further liability associated with lead-related response costs at the Site. The monetary figure ultimately agreed upon was the result of a comparative fault allocation formula. The EPA first determined that 82% of the

---

[1] To the extent Shell is also liable for arranging the disposal of PCBs at the Site, that liability to the United States and other PRPs remains actionable.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

response costs were attributable to PCBs, and 18% to lead. It divided the responsibility for the contamination evenly between the operators and generators. The EPA allocated 42.5% of Site costs (of the 50% generator Site costs) to Solutia and divided the remaining 7.5% of Site costs among the other generators, including Shell. The EPA allocated 33% of the 7.5% generator share (2.475% of Site-wide costs)[2] to Shell. Through negotiation, the EPA agreed to reduce Shell's share by 10% based on considerations such as the costs, risks and delay associated with litigation.

The United States requests that the Court enter the proposed Consent Decree which was lodged with the Court on August 23, 2006. Notice of the Consent Decree was published in the Federal Register on August 31, 2006. *See* 71 Fed. Reg. 51851. Mallinckrodt submitted comments opposing the Consent Decree. After reviewing Mallinckrodt's comments, the United States decided to lodge the Consent Decree with this Court for approval. Mallinckrodt opposes the approval.

## II. DISCUSSION

The Comprehensive Environmental Response, Compensation, Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2005), as amended by the Superfund Amendments and Reauthorization Act of 1986, P.L. 99-499, § 101 et seq., 100 Stat. 1613 ("SARA"), authorized a variety of types of settlements which the government may utilize in CERCLA actions, including consent decrees providing for PRPs to contribute to cleanup costs or to undertake response activities themselves.

---

[2] In Mallinckrodt's comments opposing the Consent Decree, it states that Shell is paying only 1.9% of Site-wide response costs. The United States claims that this calculation is based on "today's costs," which exceed $11.8 million. The United States claims that in 2004, when the Consent Decree was negotiated, the response costs were approximately $1.5 million less than they are now and that the increased costs are litigation costs largely driven by Mallinckrodt and Solutia, not Shell. Mallinckrodt has not disputed the United States' claim.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*See* 42 U.S.C. § 9622.  The Court's review function is to satisfy itself that the proposed decree is "reasonable, fair and consistent with the purposes that CERCLA is intended to serve." *United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992).  The term "fair" requires the Court to find both procedural fairness and substantive fairness.  *See United States v. BP Amoco Oil, PLC,* 277 F.3d 1012, 1018 (8th Cir. 2002).  The Court has considered the four elements for approval of a consent decree under CERCLA and will grant the United States' Motion to enter the Consent Decree with Shell.

    *a. Procedural Fairness*

    Mallinckrodt argues that the proposed Consent Decree is procedurally unfair because the United States was unwilling to participate in further negotiations with Mallinckrodt.

    "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *United States v. Cannons Eng'g Corp*., 899 F.2d 79, 86 (1st Cir. 1990).  The United States' decision not to engage in further negotiations with Mallinckrodt does not vitiate a finding of procedural fairness.  As noted by the *Cannons* court, "the CERCLA statutes do not require the agency to open all settlement offers to all PRPs; and we refuse to insert such a requirement into the law by judicial fiat .... So long as it operates in good faith, the EPA is at liberty to negotiate and settle with whomever it chooses." *Id*. at 93.  The Court's familiarity with the dealings between the parties persuades the Court that the parties to the Settlement Agreement have negotiated with one another at arm's length and in good faith.  Mallinckrodt does not suggest otherwise.  Thus, the Court finds that the settlement process involving the Consent Decree was procedurally fair.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*b. Substantive Fairness*

"Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. Consequently, "liability should be apportioned among settling PRPs according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Id*. It is reasonable that the amount of liability apportioned to a PRP may be reduced by considerations such as: "the assumption of uncertain future liability by a potentially responsible party ("PRP") and especially prompt and time-saving settlement." *United States v. Bliss*, 133 F.R.D. 559, 568 (E.D. Mo. 1991). An allocation formula used by the EPA in apportioning fault must be approved unless it is "arbitrary, capricious and devoid of a rational basis." *United States v. Union Electric*, 934 F. Supp. 324, 328 (E.D. Mo. 1996), *aff'd*, 132 F.3d 422 (8th Cir. 1997) (quoting *Cannons*, 899 F.2d at 87).

This Court in *United States v. Metropolitan St. Louis Sewer District*, 4:03CV01625 ERW, at *5-6 (E.D. Mo. September 9, 2004), noted that the EPA considered the so called "Gore factors" in apportioning fault among the PRPs and that the allocation formula, used in this case, must be approved because it is not "arbitrary, capricious and devoid of a rational basis."[3] As the

---

[3] The Gore factors are an equitable tool to apportion fault among PRPs. *See United States v. Hercules*, 247 F.3d 706, 718 (8th Cir. 2001). The factors include

> 1) distinguishable costs (based on specific wastes of specific waste types); 2) degree of involvement in management or operations at the facility; 3) degree of care (including measures taken by a party to prevent or minimize contamination); 4) fault (culpability and actual cause of the contamination); 5) degree of cooperation (degree to which a PRP cooperates or assists in cleanup efforts); 6) financial capability (whether the PRP is financially viable); 7) financial benefits derived from waste-producing activity; and 8) financial benefits derived from remediation.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Cannons* court explained, "what constitutes the best measure of comparative fault at a particular Superfund site under particular factual circumstances should be left largely to the EPA's expertise." 899 F.2d at 87. Though the allocation methodology used in the Consent Decree at issue in this case was one of many the EPA could have selected, the United States has provided a plausible explanation for its chosen measure of comparative fault.[4] The Court, therefore, finds that the Consent Decree meets the criterion of substantive fairness.

*c. Reasonableness*

When determining whether a consent decree is reasonable, the court must consider the technical adequacy of the remedies, the adequacy of the settling defendants' obligations to cover the response costs and the savings represented by settlement over litigation. *Cannons*, 899 F.2d 79, 90 (1st Cir. 1990); *see also United States v. Findett*, 75 F. Supp. 2d 995, 1001 (E.D. Mo. 1999) (reasonableness inquiry requires the court to assess "the extent to which the settlement satisfactorily compensates the public for actual and anticipated response costs"). The Court is satisfied that the public will be adequately compensated for the share of the cleanup costs at the Site for which Shell is responsible. Thus, the Court finds the Consent Decree reasonable.

*d. Consistent with Purposes of CERCLA*

The primary purposes of CERCLA are "accountability, the desirability of an unsullied environment, and promptness of response activities." *Union Electric*, 934 F. Supp. at 331 (quoting *Cannons*, 899 F.2d at 90). The Court is satisfied that the proposed Consent Decrees

---

[4] In opposing the Consent Decree, Mallinckrodt emphasizes that Shell sent 1000 drums a day to the Site. In its Motion, the United States counters that it considered the number of drums Shell sent to the site in calculating Shell's share of liability. Mallinckrodt does not dispute the United States' claim.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

serve the goals of efficient and effective environmental cleanup and regulation. Thus, the Court finds that the Consent Decree is consistent with the purposes of CERCLA.

**III. CONCLUSION**

With respect to the Consent Decree with Shell, the Court believes that the government conducted negotiations forthrightly and in good faith. Further, the Court finds the EPA's allocation methodology reasonable. The Decree thus satisfies the requisite procedural and substantive integrity. Accordingly, the Court finds the Consent Decree to be fair, reasonable and faithful to the objectives of the governing statute and grants the United States' Motion to enter the Consent Decree.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion to Approve Consent Judgment [doc. #641] is **GRANTED**. The Court adopts the Consent Decree as submitted by the parties.

Dated this 10th day of May, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com